(107 App. Div. 324.)

PARSONS BROS., Inc., v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.   August 31, 1905.)

1. UNIMPROVED STREETS — ENCROACHMENTS — GREATER NEW YORK CHARTER—CONSTRUCTION.

Greater New York Charter, Laws 1901, p. 406, c. 466, § 971, provides that the board of estimate and apportionment may permit any building partly or wholly within a street laid out in the city, and to be opened, to remain unremoved for such time as they think proper; and section 151, subd. 1 (page 53), declares that it shall be lawful for the finance department to collect rentals for the temporary use of property acquired by the city for public purposes, between the time of the acquisition thereof and the time when the same was actually utilized for the purposes for which it was acquired. *Held* that, in view of such provisions, section 990 (page 419), declaring that the title acquired by the city to land required for a street shall be in trust that the same be appropriated and kept open for or as a part of a public street, etc., did not impose on the city the obligation actually to keep an unimproved street open for public travel from the instant the report of the opening proceeding was confirmed by the Supreme Court.

2. SAME—FENCES.

A fence maintained across land acquired by a city for street purposes is a "building," within Greater New York Charter, Laws 1901, p. 406, c. 466, § 971, authorizing the board of estimate and apportionment to permit any building wholly or partially within the limits of an unopened street to remain unremoved for such time or times as they shall think proper.

3. SAME—SURFACE WATER—DAMAGES.

Where the city of New York permitted a fence to remain across an unopened street, as it was authorized to do by Greater New York Charter, Laws 1901, p. 406, c. 466, § 971, after the land had been acquired for street purposes, the fence was not an illegal obstruction on the street, so as to entitle plaintiff to recover damages caused by surface flood water flowing on the street, which was turned back over plaintiff's land by the fence.

Appeal from Special Term, Kings County.

Action by Parsons Bros., Incorporated, against the city of New York and others. From a judgment enjoining defendants from maintaining a fence and other obstructions on Nineteenth street, in the borough of Brooklyn, commanding the removal thereof, and awarding plaintiff $1,000 for past damages, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-
WARD, RICH, and MILLER, JJ.

Patrick E. Callahan (James D. Bell, on the brief), for appellant
city of New York.

J. A. C. Johnson, for appellants Hilton & Dodge Lumber Co. and
Georgia-Florida Lumber Co.

Conrad Saxe Keyes, for respondent.

WILLARD BARTLETT, J. By an order of the Supreme Court
dated June 12, 1903, proceedings for the opening of Nineteenth
street, in the borough of Brooklyn, from high-water mark to the
bulkhead line, were duly confirmed. At that time there was upon
the portion of the street thus newly opened a fence which had
been erected in September, 1902. This fence extended across the
street to the west of the plaintiff's property. On the 29th of June
and the 9th of October, 1903, in consequence of heavy rains, the
surface of the ground was flooded, and the water flowing against
this fence was turned back and thrown upon the plaintiff's property,
causing damage. The plaintiff has brought this action to prevent
the further maintenance and to compel the removal of the fence as
an unlawful encroachment upon the street, and also to recover dam-
ages on account of the effect of the obstruction in throwing back
upon their premises water which would otherwise have flowed into
the harbor.

The theory of the suit is that, just as soon as the order was
made confirming the street opening proceeding, the fence became
an unlawful encroachment, and could not properly be maintained
either by the city or the other defendants, notwithstanding the fact
that the street had never been, and has never been, actually opened,
graded, or paved. The plaintiff invokes the operation of that part
of section 990 of the Revised Greater New York Charter (Laws
1901, p. 419, c. 466), which provides:

"The title acquired by the city of New York to lands and premises required
for a street, shall be in trust, that the same be appropriated and kept open
for, or as part of a public street, forever, in like manner as the other streets
in the city are and of right ought to be."

The position of the plaintiff would seem to be technically cor-
rect, if it be true that the law imposes upon the city the obligation
actually to keep the street open for public travel from the instant
that the report in the opening proceeding is confirmed by the Su-
preme Court. There are other portions of the charter, however,
which clearly indicate to my mind that the Legislature did not in-
tend to impose so strict and peremptory a duty upon the city offi-
cials. The authority to open streets is conferred by section 970 of
the Revised Greater New York Charter. The section immediately
following (971) provides as follows:

"The board of estimate and apportionment may permit any building which
shall be either partly or wholly included within the limits of any such street,
or park laid out in the said city, and so to be opened as aforesaid, to remain
unremoved for such time or times as they shall think proper."

This provision is plainly inconsistent with the idea that the municipal authorities must immediately remove every obstruction from a proposed street before it is even graded or paved. It is manifestly intended to confer a reasonable discretion in regard to the time when buildings or other structures within the lines of the contemplated street shall actually be removed with reference to the progress of the work of grading and paving. That such was the legislative intent is further shown by subdivision 1 of section 151 of the charter, in the provision relating to the bureau in the finance department, under the collector of city revenue and the superintendent of markets. That provision is as follows:

"It shall be lawful for such bureau, under the direction of the comptroller, to collect rental for the temporary use and occupation of property acquired by the city for public purposes between the time of the acquisition thereof and the time when the same can be actually utilized for the purposes for which it was acquired."

It seems to me that the fence in question in this case was a building within the meaning of the language which has been quoted from section 971 of the charter. It was treated as such by the city officers, and the property upon which it stands was leased by the city to the defendant the Hilton & Dodge Lumber Company, at a small monthly rental, evidently under the power conferred by the provision above quoted from section 151 of the charter. I do not see how it can be held that the city has done an unlawful act in doing precisely what section 971 of the charter provides that it may do; that is, for allowing a building included within the limits of a newly opened street to remain unremoved for such time or times as the board of estimate and apportionment may think proper. That seems to be all that the city has done in the present case. The use to which the land has been put by the erection of the fence in question is not such as to give the plaintiff any right of action, unless the fence at the time of the floods constituted an illegal obstruction upon the street. It does not seem to me that its presence there was unlawful, in view of the provisions of law which I have cited. It may be that relief could be had by a property owner situated as is the plaintiff, if the board of estimate and apportionment permitted a structure to remain unremoved upon a newly opened street for an unreasonable length of time, under all the circumstances; but, whether that be so or not, I think the plaintiff has failed to make out a case for either injunctive relief or an award of damages in the present action.

Judgment reversed and new trial granted; costs to abide the final award of costs. All concur.